UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-442-GWU

REGINA THOMAS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on the plaintiff's motion for summary judgment and the defendant's motion for entry of judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:


> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Regina Thomas, filed an application for Supplemental Security Income (SSI) benefits on March 2, 2004, which was eventually denied in a decision by an Administrative Law Judge (ALJ) on February 1, 2006. (Tr. 15-24). The Appeals Council declined to review, and this action followed.

After the plaintiff filed her motion for summary judgment, the defendant submitted a motion for entry of judgment and to remand in order to "allow the [ALJ] to further evaluate Plaintiff's residual functional capacity in light of the evidence of record [and to] obtain vocational expert testimony that is consistent with Plaintiff's residual functional capacity." Commissioner's Motion for Entry of Judgment and to Remand, Docket Entry No. 10, p. 2. The plaintiff opposes the Commissioner's motion, arguing that a remand for further administrative development would cause needless delay, and that substantial evidence already supports an award of benefits.

Since the Commissioner has conceded that the ALJ's decision is not supported by substantial evidence, the only question is whether the evidence clearly or overwhelmingly supports an immediate award of benefits.

Mrs. Thomas alleged disability due to nervousness, a back problem, and a heart problem. (Tr. 84). The ALJ found "severe" impairments consisting of degenerative disc disease, borderline intellectual functioning and a dysthymic disorder, and determined in his decision that the plaintiff would be limited to "light work except that which requires lifting and carrying more than 10 pounds occasionally," sitting more than six hours in an eight-hour day, and walking/standing more than two hours in an eight-hour day, in addition to having non-exertional restrictions of (1) no more than occasional climbing or stooping; and (2) a "limited but satisfactory" ability to follow work rules, relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, and demonstrate reliability. (Tr. 18, 21).[1]

The basis of the plaintiff's argument justifying an award of benefits is an opinion from her treating family physician, Dr. John Patton, dated December 8, 2005. Dr. Patton limited Mrs. Thomas to lifting and carrying less than 10 pounds, standing and walking two hours in an eight-hour day, sitting less than six hours in an eight-

---

[1]The hypothetical questions the ALJ proposed to the vocational expert (Tr. 437) differed significantly from his ultimate findings, however.

hour day, having a limited ability to push and pull, never climbing, balancing, crouching, or stooping, occasionally kneeling, crawling, reaching, fingering, and feeling, and having limitations on working around temperature extremes, vibration, humidity/wetness, and hazards. (Tr. 400-3).[2] The basis for these restrictions were given as degenerative disc disease in the thoracic and lumbar spine, not responsive to epidural treatment, and an abnormal MRI. (Tr. 401). The ALJ rejected Dr. Patton's opinion, stating that it "is too excessive and was not corroborated by his findings or documented by his own office notes." (Tr. 17).[3]

Mrs. Thomas argues that Dr. Patton's opinion was uncontradicted by any treating or examining source, and notes that the only other opinions regarding the plaintiff's physical functional capacity were given by a state agency physician who did not have the benefit of a review of the entire record. (Tr. 33).

Nevertheless, the opinion of even a treating source is not given controlling weight unless it is "well supported by medically acceptable clinical and laboratory

---

[2]The restrictions could be interpreted as being inconsistent with even "sedentary" level exertion and as allowing for less than full-time work.

[3] The most recent evidence from the plaintiff's cardiologist, Dr. Natarajan Thannoli, notes that "multiple investigations" were performed, with a echocardiogram showing good ventricular function, "questionable ischemia" on a stress test, and a cardiac catheterization showing small vessels but no significant blockages. (Tr. 289). The plaintiff continued to smoke against medical advice. Dr. Thannoli diagnosed chest pain with atypical qualities, hypertension, high cholesterol, mitral regurgitation, and shortness of breath secondary to tobacco abuse. No functional restrictions were suggested, and her cardiac status was said to be stable. (Id.).

diagnostic techniques [and] not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. Section 416.927(d)(2).  See, e.g., Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  In the present case, Dr. Patton obtained an MRI of the lumbosacral spine in August, 2000, which showed only a "small focal extrusion" at L4-5.  (Tr. 147).  He referred his patient to a neurosurgeon, Dr. Amr O. El-Naggar (Tr. 189).  Dr. El-Naggar examined the plaintiff on November 8, 2000 and noted that the plaintiff's complaints of low back pain had recently increased, and two weeks previously had found that she was "pregnant again."  (Tr. 124).  She was neurologically intact, and Dr. El-Naggar interpreted the lumbar MRI as showing "mild disc desiccation" at L4-5 with no evidence of disc herniation or nerve root compression.  (Id.).

While Dr. Patton was clearly a long-term treating source, having submitted office notes covering the period 1997 through 2006 (Tr. 153-96, 295-306, 404-15), his actual physical findings, if given at all, primarily reflect only tenderness (Tr. 154, 169-73). The notes also show that many of the plaintiff's recent complaints were centered on neck, shoulder and arm pain. (Tr. 154, 164, 415). In August, 2005, Dr. Patton's colleague, Dr. Burgess, referred Mrs. Thomas to a pain management specialist, Dr. Howard Lynd, for evaluation of "chronic neck and back pain." (Tr. 396). Dr. Lynd reviewed two MRIs of the cervical spine, one of which was "essentially normal" and the other which showed straightening and "mild" degenerative changes

without cord compression. A thoracic spine MRI showed a protrusion at T3-4. (Id.). However, his physical examination was notable for "diffuse hyperalgesia" and was otherwise "nonfocal." (Tr. 397). No restrictions were identified, although two injections were given. (Tr. 392-5). Thus, although there was some objective evidence in the thoracic MRI, the physical findings by the treating source and the specialist are certainly less than overwhelming.

After giving his restrictions, Dr. Patton made another referral to Dr. P. D. Patel for an EMG evaluation of complaints of left leg numbness, but the EMG was normal and Dr. Patel suggested bursitis of the left hip as a possible cause of the numbness. (Tr. 412, 415). Once again, this evidence falls short of conclusively establishing disabling restrictions.

Finally, it is noteworthy that the office note accompanying Dr. Patton's restrictions contains many more references to subjective reports of limitations than to medical findings. (Tr. 404).

Regarding the mental restrictions, the plaintiff notes that Dr. R. Bokhari, a treating source, provided a highly restrictive assessment to the Appeals Council (Tr. 417-19) and, while this cannot be considered as part of the Court's substantial evidence review, it is clear that the ALJ did not consider the implications of Global Assessment of Functioning (GAF) score of 50 from Dr. Bokhari which were in records submitted to him (Tr. 18, 351-7). A GAF score of 50 reflects "serious"

symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. Dr. Bokhari's assessment should be considered, along with other new evidence on remand.

Therefore, although the evidence does not support an outright award of benefits in its present state, the ALJ's functional capacity assessment is not supported, either, in view of the fact that the treating physician's opinion is not contradicted by an examining or reviewing source with access to the entire record. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).Since the case is being remanded anyway, the parties may wish to submit additional evidence to support their respective positions.

Therefore, an order will enter granting the plaintiff's motion for entry of judgment and to remand, for consideration of both the plaintiff's functional capacity as well as for additional vocational testimony.

This the 10th day of April, 2007.

**Signed By:**

***G. Wix Unthank*** GWU

**United States Senior Judge**